# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>GILBERT JOSEPH REZENTES and<br>HEIDI PUALANI JIMENEZ KELLY<br>REZENTES,<br><br>      Debtors. | Case No. 06-00754<br>Chapter 13<br><br>Re: Docket Nos. 2 & 23 |

**MEMORANDUM OF DECISION
ON OBJECTION TO PLAN CONFIRMATION**

I.      INTRODUCTION

      The question is whether debtors with above-median income can calculate their chapter 13 plan payments by deducting from their income the IRS local standard housing expense even though the debtors' actual housing expense is substantially less. I reluctantly conclude that the answer is no; such debtors can claim the IRS local standard amount or their actual housing expense, whichever is less.

II.     FACTUAL BACKGROUND

      Gilbert and Heidi Rezentes filed a chapter 13 petition as joint debtors on October 18, 2006. Gilbert Rezentes is a bus driver for the City & County of Honolulu transit system and Heidi Rezentes is a teacher in the Hawaii public

schools. They have four minor children.

The debtors' schedules show modest assets of $39,850, of which $13,675 is exempt; secured debt of $32,189.20 for a car loan and financed furniture; and unsecured nonpriority debt of $107,336.27, of which $42,105.14 is student loan debt. eCAST has filed claims totaling $55,292.57, which represents more than half of the debtors' unsecured debt.

As the rules require, the debtors filed two sets of forms that reflect their income and expenses. The first form is the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income, or Form B22C. The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), which applies to this case, requires all debtors to provide the information requested in Form B22C. Form B22C requires debtors to state their "current monthly income," meaning the average monthly income they received in the six months prior to the bankruptcy. 11 U.S.C. § 101(10A)(A)(i). The debtors' Form B22C lists combined "current monthly income" of $7,944.73.

The debtors also filed Schedule I, which states their income at the petition date (rather than their average income during the prior six months). On their Schedule I, the debtors listed combined monthly gross wages of $7,928.58 and combined average monthly take-home income of $6,380.74. Thus, the debtors'

2

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed 04/02/07   Page 2 of 18

income at the petition date is not materially different from their "current monthly income," as defined.

The two sets of forms show dramatically different expenses. The debtors' Schedule J shows combined monthly expenses of $4,976, which leaves combined monthly net income after expenses of $1,404.74. The debtors' Form B22C, however, shows monthly disposable income of negative $110.08, or $1,514.82 less than the figure arrived at by subtracting actual monthly expenses listed on Schedule J from monthly income reported on Schedule I.

The difference is almost entirely attributable to a difference in the reported housing expense.

The debtors' actual housing expense is $300 per month. Until recently, the debtors and their children lived in a series of rented homes in Kailua, where Heidi Rezentes works. The family paid $2,100 in monthly rent for a three-bedroom house in the first six months of 2005 and then sought less expensive accommodations in the face of tightening finances. From July 2005 to June 2006, the debtors rented another three-bedroom house for $1,800 per month. When money got even tighter, the family moved in June 2006 to the home of Gilbert Rezentes' parents in nearby Waimanalo. With Gilbert Rezentes' brother also living at the Waimanalo residence, there are nine people sharing a three-bedroom

3

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed  04/02/07   Page 3 of 18

house. Gilbert and Heidi Rezentes pay $300 per month in rent to his parents. Accordingly, the debtors properly listed a monthly housing expense of $300 on Schedule J.

The debtors' Form B22C, however, shows a housing expense of $2,000 per month. This inconsistency results from the fact that the debtors' annualized current monthly income on Form B22C ($95,336.76) exceeds the median income for a family of six in Hawaii ($91,840). Because the debtors earn more than the median, section 1325(b)(3)[1] requires calculation of their monthly expenses in accordance with the chapter 7 "means test" of section 707(b)(2)(A) and (B). The means test uses the IRS national and local standards for allowable expenses. The local standard for mortgage/rent expense for a family of six in the City & County of Honolulu is $2,000. Including the $2,000 housing deduction, the debtors' deductions on Form B22C totaled $8,054.81 against current monthly income of $7,944.73, leaving net income of negative $110.08.

In their chapter 13 plan filed on October 18, 2006, the debtors propose to pay $200 per month for 60 months. The debtors estimate that the total distribution

---

[1] Unless otherwise noted, all statutory references are to the Bankruptcy Code, as amended by BAPCPA, 11 U.S.C. § 101, *et seq*. (2005).

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed 04/02/07   Page 4 of 18

of $12,000 will pay 9.9 percent of the debtors' scheduled general unsecured debt.[2]

In addition, the debtors will make monthly payments of $521 and $73 outside the plan on the secured auto and furniture loans, respectively.

III.    SUMMARY OF CONTENTIONS

The debtors' largest unsecured creditor, eCAST Settlement Corp., agent for and assignee of various creditors ("eCAST'), filed an amended objection to confirmation on January 12, 2007. eCAST argues that the chapter 13 plan cannot be confirmed because the debtors are not devoting all of their projected disposable income to payment of unsecured claims, as section 1325(b)(1)(B) requires. Specifically, eCAST objects to the debtors' claiming the full deduction of $2,000 under the IRS local standard for mortgage/rent expense for a family of six when the debtors' actual monthly rental expenses is only $300.

eCAST argues in favor of two alternative approaches to determining the debtors' projected disposable income for plan confirmation purposes.

First, eCAST urges that the debtors' projected disposable income be determined by subtracting the monthly expense total on Form B22C from monthly

---

[2] Unsecured claims filed by the claims bar date of February 20, 2007, totaled $108,050.09. A distribution of $12,000 would result in payment of 11.1 percent of all such claims.

5

gross income listed on Schedule I, with Form B22C expense deductions capped at amounts actually expended. If Form B22C deductions are reduced by $1,700 to limit the debtors' housing deduction to the actual expense of $300 and the revised deduction total is subtracted from Schedule I gross income of $7,928.58, the debtors would have $1,573.77 per month in projected disposable income.

Alternatively, eCAST argues that projected disposable income should be determined by subtracting actual monthly expenses listed on Schedule J from net monthly take-home pay on Schedule I.[3] This would leave the debtors with projected disposable income of $1,404.74 per month.[4]

The court heard the objection on January 18, 2007. Blake Goodman, Esq., appeared for the debtors; James Y. Agena, Esq., appeared for eCAST; and the chapter 13 trustee, Howard Hu, appeared for himself. The court determined that the debtors had not provided evidentiary support for certain factual assertions, and it gave the debtors until February 2, 2007, to submit such evidence and eCAST

---

[3] With respect to the first alternative approach, eCAST urges that gross wages, salary and commissions rather than net monthly take-home pay on Schedule I should be used because the monthly expense total on Form B22C already includes taxes. Amended Objection at 8 n. 3. On Line 30 of Form B22C, a debtor may deduct expenses incurred for federal, state and local taxes other than property and sales taxes. On Line 31, a debtor may deduct mandatory payroll deductions such as union dues, mandatory retirement contributions and uniform costs.

[4] eCAST does not challenge the reasonableness or necessity of any of the expenses listed by the debtors on Schedule J.

6

U.S. Bankruptcy Court - Hawaii  #06-00754  Dkt # 32  Filed 04/02/07  Page 6 of 18

until February 12, 2007, to respond. The court took the matter under advisement.[5]

IV. STANDARD

Under section 1325(b)(1), if the trustee or holder of an allowed unsecured claim objects to confirmation, then the court may not approve the plan unless it either pays unsecured claims in full, or, as of the effective date of the plan,

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Before BAPCPA, courts usually calculated the disposable income of chapter 13 debtors by subtracting from Schedule I income the expenses reported on Schedule J that the courts determined were reasonably necessary for the support of the debtor and the debtor's dependents. For debtors with income below the applicable median, BAPCPA does not change the definition of reasonably necessary expenses. If a debtor's annualized current monthly income is above the median income for his or her state and household size, however, section 1325(b)(3) provides that "[a]mounts reasonably necessary to be expended under paragraph (2)

---

[5] This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (L), over which the court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a) and (b)(1).

7

shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . . ." Section 707(b)(2)(A)(ii)(I) in turn provides that "[t]he debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides . . . ."

The national and local standards referred to in section 707(b)(2) are used by the IRS to determine a taxpayer's ability to pay delinquent taxes. The national standards establish necessary expense amounts for food, housekeeping supplies, apparel and services, personal care products and services, and "miscellaneous." Internal Revenue Manual ("IRM") § 5.15.1.7 ¶ 3. The local standards establish necessary amounts for housing and transportation. IRM § 5.15.1.7 ¶ 4(b). Local housing standards are established for each county within a state. IRM § 5.15.1.7 ¶ 4(a).

The IRS allows taxpayers to deduct the full amount allowed under the national standards without regard to how much is actually spent. However, the Internal Revenue Manual explains that, "Unlike the national standards, the local standards for housing, utilities, and transportation serve as a cap. The taxpayer is

8

U.S. Bankruptcy Court - Hawaii    #06-00754    Dkt # 32    Filed  04/02/07    Page 8 of 18

allowed the local standard or the amount actually paid, **whichever is less**." IRM § 5.19.1.4.3.2 ¶ 2 (2002). (Emphasis in original.) The IRS does, however, advise its agents that the "[n]ational [and] local expense standards are guidelines" and, "If it is determined a standard amount is inadequate to provide for a specific taxpayer's basic living expenses," a deviation is to be allowed if the taxpayer provides reasonable substantiation. IRM § 5.15.1.7 ¶ 7.

The Bankruptcy Code does not say whether courts should follow the IRM guidelines in determining projected disposable income of chapter 13 debtors.

V.  DISCUSSION

The determination of "projected disposable income" has bedeviled courts since BAPCPA went into effect in October 2005. The difficult questions raised by BAPCPA relate to both the income and expense components of "disposable income."

A.  Income

eCAST argues that the debtors' plan payments must be based on the income reported on Schedule I, rather than Form B22C. It is not clear why eCAST makes this argument, because the debtors' Form B22C income, upon which the debtors base their plan, is higher than their Schedule I income. In any event, the difference

9

is only $16 per month, so I need not reach this issue.

  B. <u>Expenses</u>

    1. <u>*Schedule J vs. Form B22C*</u>

eCAST argues that projected disposable income should be based on the debtor's actual expenses listed in Schedule J, rather than the "means test" expenses listed in Form B22C. This argument is without merit. Section 1325(b)(3) provides that reasonably necessary expenses of above-median income debtors *"shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)"* and section 707(b)(2)(A)(ii)(I) provides that "[t]he debtor's monthly expenses *shall be* the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . ." (Emphasis added.) "Shall" typically means "must." <u>In re Farrar-Johnson</u>, 353 B.R. 224, 228-29 (Bankr. N.D. Ill. 2006)(citing <u>Gutierrez de Martinez v. Lamagno</u>, 515 U.S. 417, 432 n. 9 (1995)). Congress' use of the term "shall" in sections 1325(b)(3) and 707(b)(2) makes the use of the means test expenses mandatory for above-median debtors. <u>See, e.g.</u>, <u>Farrar-Johnson</u>, 353 B.R. at 229, and <u>In re Barr</u>, 341 B.R. 181, 185 (Bankr. M.D.N.C. 2006).

    2. <u>*Local Standard Housing Expense vs. Actual Monthly Expense*</u>

The question remains whether the IRS local standard housing expense is a

U.S. Bankruptcy Court - Hawaii #06-00754 Dkt # 32 Filed 04/02/07 Page 10 of 18

fixed allowance or a cap on actual expenditures.

Some courts have held that the plain language of the statute provides that the local standard is a fixed allowance. See, e.g., In re Enright, 2007 WL 748432, at * 5 (Bankr. M.D.N.C. Mar. 6, 2007); In re Grunert, 353 B.R. 591, 594 (Bankr. E.D. Wis. 2006); In re Haley, 354 B.R. 340, 344 (Bankr. D. N.H. 2006); In re Hartwick, 352 B.R. 867, 868-69 (Bankr. D. Minn. 2006); Farrar-Johnson, 353 B.R. at 230; and In re Fowler, 349 B.R. 414, 418.  These courts have concluded that Congress could not have meant to limit above-median debtors to actual expense amounts under the national and local standards when Congress used the term "applicable" in referring to those standards and "actual" in referring to the separate category of "Other Necessary Expenses."  "[I]t is generally presumed that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another . . . ." BFP v. Resolution Trust Corp., 511 U.S. 531 (1994) (quoting Chicago v. Environmental Defense Fund, 511 U.S. 328, 338 (1994)).  In section 707(b)(2)(A)(ii)(I), "Congress drew a distinction in the statute between 'applicable' expenses on the one hand and 'actual' expenses on the other." Farrar-Johnson, 353 B.R. at 230.

Farrar-Johnson involved joint debtors who claimed the full housing deduction under the IRS local standard on their Form B22C despite the fact that

11

they lived in military housing and did not pay any rent or mortgage. 353 B.R. at 226-27. The court found that the debtors were entitled to the deduction under a plain reading of section 707(b)(2)(A)(ii)(I), and that it was "not the courts' place to rewrite the statute, turning it into something they consider more logical, sensible, or conducive to human progress and enlightenment." 353 B.R. at 229. The applicability of the local housing standard – and the debtors' entitlement to the entire deduction provided by it – rested simply upon where the debtors lived and their household size. "Expenses under the 'Local Standards,' in contrast [to those under Other Necessary Expenses], need only be those 'applicable' to the debtor – because of where he lives and how large his household is. It makes no difference whether he 'actually' has them." 353 B.R. at 230-31.

Fowler notes that, unlike the IRS guidelines which explicitly provide that the local standards serve merely as caps on actual expenditures, there is no reference in section 707(b)(2)(A)(ii)(I) to the use of the local standards as a cap. This fact "evidences that [Congress] . . . did not intend the Local Standards to apply as a cap." 349 B.R. at 418.[6]

---

[6] See also, Eugene R. Wedoff, Means Testing in the New § 707(b), 79 Am. Bankr. L.J. 231, 256 (2005):

> [B]ecause § 707(b)(2)(A)(ii)(I) provides that the debtor's allowed expense deductions "shall be" the "amounts specified" under the Local Standards – and because the statute makes no provision for reducing the specified amounts to the

12

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed 04/02/07   Page 12 of 18

Courts following the fixed-allowance view of the IRS local standards also cite the legislative history of BAPCPA. Fowler notes, for example, that a prior draft of BAPCPA defined "projected monthly net income" for purposes of the means test as:

> (A) the expense allowances under the applicable National Standards, Local Standards and Other Necessary Expenses allowance (excluding payments for debts) for the debtor . . . in the area in which the debtor resides as determined under the Internal Revenue Service financial analysis for expenses in effect as of the date of the order for relief.

349 B.R. at 419 (quoting H.R. 3150, 105th Cong. § 101(3)(A) (1998)). The court found that the change from the prior draft evidences Congress' intent that the courts not be bound by the analysis contained in the Internal Revenue Manual and should look only to the amounts set forth in the local standards. Id.

Barr also argues that the legislative history "reflects that Congress was aware that section 1325(b)(3) represented a departure from using the debtor's actual expenses in favor of IRS standards that might differ markedly from the debtor's actual expenses." 341 B.R. at 185. The court notes that some in Congress criticized the fact that "[t]he bill . . . makes substantial changes to chapter 13 by substituting the IRS expense standards to calculate disposable income" and stated

---

debtor's actual expenses – a plain reading of the statute would allow a deduction of the amounts listed in the Local Standards even where the debtor's actual expenses are less.

13

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed  04/02/07   Page 13 of 18

that "the formula remains inflexible and divorced from the debtor's actual circumstances." 353 B.R. at 185 (quoting from the dissenting views of the Report of the Committee on the Judiciary, House of Representatives, to Accompany S. 256, H.R. Rep. No. 109-31, pt. 1, at 553, 109th Cong., 1st Sess. (2005)).

Other courts have reached the opposite conclusion, holding (mostly in the context of vehicle ownership expenses) that debtors cannot claim deductions under the IRS local standard for expenses that they do not actually incur. See, e.g., In re Caesar, 2007 WL 777821, at * 5 (Bankr. W.D. La. Mar. 6, 2007); In re Slusher, 2007 WL 118009, at * 14 (Bankr. D. Nev. Jan. 17, 2007), at * 14; In re Devilliers, 2007 WL 92504, at * 6 (Bankr. E.D. La. Jan. 9, 2007); In re McGuire, 342 B.R. 608, 613 (Bankr. W.D. Mo. 2006); In re Carlin, 348 B.R. 795, 798 (Bankr. D. Or. 2006); In re Wiggs, 2006 WL 2246432, at * 2-3 (Bankr. N.D. Ill. 2006); and In re Hardacre, 338 B.R. 718, 728 (Bankr. N.D. Tex. 2006).

Slusher notes, for example, that the term "applicable" in section 707(b)(2)(A)(ii)(I) can be interpreted in several different ways. 2007 WL 118009, at * 13 n. 33. Moreover,

> Had Congress intended to indiscriminately allow all expense amounts specified in the National and Local Standards, it would have written 707(b)(2)(A)(ii)(I) to read, "The debtor's monthly expenses shall be the monthly expense amounts specified under the National Standards and Local Standards ..." rather than "The debtor's monthly expenses shall be *the debtor's applicable* monthly expense amounts specified

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed  04/02/07   Page 14 of 18

under the National and Local Standards."

2007 WL 118009, at * 13.

The meaning of section 707(b)(2)(A)(ii)(I) is far from "plain." Both interpretations find support in the statutory text. "[I]f the statutory language gives rise to several different interpretations, we must adopt the interpretation which 'can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and with the general purposes that Congress manifested.'" In re Arizona Appetito's Stores, Inc., 893 F.2d 216, 219 (9th Cir. 1990)(quoting United States v. 594,464 Pounds of Salmon, 871 F.2d 824, 827 (9th Cir. 1989)).

Congress made clear that the income/expense screening mechanism of section 707(b)(2)(A) and (B) was "intended to ensure that debtors repay creditors the maximum they can afford." H.R. Rep. No. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89. The fixed-allowance interpretation of section 707(b)(2)(A)(ii)(I) is inconsistent with this guiding principle of BAPCPA.

Finally, the Slusher court persuasively reasoned that, "Congress' decision to use the IRS standards within the Bankruptcy Code strongly suggests that courts should look to how the IRS determined those standards; that is, as to how the IRS would have applied them in similar circumstances." 2007 WL 118009, at * 14. If

15

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed  04/02/07   Page 15 of 18

Congress had intended to adopt the IRS standards but prevent the courts from looking to the IRS's own interpretations of its standards, it seems reasonable to expect that it would have said so explicitly.

Therefore, I conclude that, for purposes of calculating projected disposable income, debtors may deduct the local standard housing expense or their actual housing expense, whichever is less.

   3. *Possible Solutions for the Debtors' Dilemma*

The irony of this case is that the debtors must make larger plan payments because they moved into a too-small home in a valiant and commendable effort to pay their creditors. If the debtors had remained in one of their prior residences, rather than reduced their housing expense in a failed attempt to keep up with their bills, the debtors could have claimed the entire local standard housing expense.

Moreover, although the record does not contain evidence on this point, it seems unlikely that the debtors want to live for the next five years in a three bedroom house occupied by five adults and four children. Presumably, the debtors are seeking chapter 13 relief so they can resume a standard of living which is more reasonable and which chapter 13 would permit (so long as their housing expense did not exceed the local standard).

Although I am constrained to deny confirmation of this plan, the debtors still

16

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed 04/02/07   Page 16 of 18

have options. They could propose a plan based on their current actual housing expense, and later propose a plan modification if they are able to find better (but more expensive) housing. Or they could propose a plan with variable payments that would allow them to "save up" for and then move into more appropriate housing. For example, the plan payments could be based on the full local standard housing expense until the difference between the local standard and their current actual housing expense is equal to the estimated cost of moving into a new home costing as much as the local standard (presumably first and last month's rent plus a security deposit equal to one month's rent); then the payments would increase to an amount based on the debtors' actual housing expense of $300 per month; and, if the debtors provided the standing trustee with a bona fide agreement for the rental or purchase of another home costing more than $300 per month, the plan payments would automatically adjust to an amount based on the lesser of the local standard housing expense or the actual housing expense.

I am not opining on whether either of these options is confirmable and I would not do so without hearing from all parties in interest. There may be other, better solutions. My purpose in making these suggestions is to indicate that, in my view, chapter 13 (even under BAPCPA) does not necessarily require debtors to live in substandard housing and does not always prove that no kind deed goes

17

U.S. Bankruptcy Court - Hawaii   #06-00754   Dkt # 32   Filed  04/02/07   Page 17 of 18

unpunished.

VI.     CONCLUSION

Based on the foregoing, the court sustains eCAST's objection to plan confirmation. This memorandum of decision shall serve as the court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The standing chapter 13 trustee shall submit a proposed order denying confirmation of the plan.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 04/02/2007